UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HANDAL & ASSOCIATES, INC., <br><br> Plaintiff, <br><br> v. <br><br> JONATHAN BRUCE SANDLER (A.K.A. JONTY SANDLER), <br><br> Defendant. | Case No.: 3:18-cv-00169-L-AGS <br><br> **ORDER DENYING DEFENDANT'S MOTION TO DISMISS** |

Pending before the Court is Defendant Jonathan Bruce Sandler's ("Sandler") motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff Handal & Associates, Inc. ("Handal") opposed, and Sandler replied. The Court decides this matter on the briefs without oral argument. *See* Civ. L. R. 7.1.d.1. For the reasons stated below, Defendant's motion is denied.

**I.   BACKGROUND**

According to the First Amended Complaint, Handal entered into a written retainer agreement. (Frist Am. Compl. (doc. no. 10, "FAC"); FAC Ex. A (doc. no. 10-1, "Agreement")). The purpose of the Agreement was to represent several clients as "Plaintiffs in the African Wireless, Inc., Derivative Action" ("Derivative Action").

/ / / / /

(Agreement at 2;[1] *see also* FAC ¶¶ 1, 6.)  Among other things, the Agreement provides for a 15% contingency fee of up to $5 million.  (Agreement at 3.)  Handal claims it litigated the Derivative Action to judgment that exceeded $93 million and contends this entitles it to the maximum fee of $5 million.  (FAC ¶ 9.)

Sandler was a representative of one of Handal's clients, Wymont Services, Ltd. ("Wymont").  (Agreement at 2, 7.)  Handal claims that Sandler, acting for his personal financial gain, falsely told Handal's clients that Handal was negligent and committed malpractice in the Derivative Action.  (FAC ¶ 10.)  Sandler allegedly proposed to assist Handal's clients to avoid paying Handal in exchange for a percentage of the money they would save by not paying Handal.  (*Id.* ¶11.)  Specifically, Sandler told the clients that by suing Handal for malpractice, he "would get [Handal's] malpractice carrier to pay an amount to offset the fees owed to [Handal]."  (*Id.*)

Handal alleges that based on Sandler's statements the clients refused to pay the $5 million contingency fee.  (*Id.* ¶ 13).  On May 17, 2017, the clients filed a malpractice action against Handal, *Wymont Servs. Ltd. et al. v. Handal & Assocs. et al.,* Cal. Super. Ct., Orange County case no. 30-217-00920613 ("Malpractice Action").  (Def.'s Req. for Judicial Notice Ex. D (doc. no. 12-4, "Def.'s Ex. D") at 2.)  Handal filed a cross-complaint against them alleging breach of contract and anticipatory breach.  (*Id*. at 4; *see also* Opp'n (doc. no. 14) at 6.)  In addition, Handal filed this action for intentional inducement to breach contract, intentional interference with prospective economic advantage, and defamation against Sandler, who is not a party to the Malpractice Action.  On January 18, 2019, the California Court of Appeal affirmed the judgment in the Derivative Action. (Doc. no. 18-1.)  The Malpractice Action remains pending.
/ / / / /

---

[1] All page references are assigned by the Electronic Case Management System.

## II. DISCUSSION

Sandler moves to dismiss this action pursuant to Rule 12(b)(6). A motion under Rule 12(b)(6) tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is warranted where the complaint lacks a cognizable legal theory. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (internal quotation marks and citation omitted). Alternatively, a complaint may be dismissed where it presents a cognizable legal theory yet fails to plead essential facts under that theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

In reviewing a Rule 12(b)(6) motion, the Court must assume the truth of all factual allegations and construe them most favorably to the nonmoving party. *Huynh v. Chase Manhattan Bank*, 465 F.3d 922, 997, 999 n.3 (9th Cir. 2006). In pleading sufficient facts, a plaintiff must proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). However, legal conclusions need not be taken as true merely because they are couched as factual allegations. *Id.* at 555. Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998).

### A. Defamation

Handal claims that Sandler defamed him when he represented to Handal's clients that Handal committed malpractice. (FAC ¶¶ 10, 11, 20-23.) Sandler argues that Handal fails to state a claim because his alleged statements were opinions rather than provable statements of fact, and, alternatively, are protected by the litigation privilege.

#### 1. Statement of Fact

To state a claim for defamation, the plaintiff must allege, among other things, "a statement of fact that is provably false." *Charney v. Standard Gen., L.P.*, 10 Cal. App. 5th 149, 157 (2017). Sandler contends that statements that an attorney was incompetent and committed malpractice are not provably false statements of fact.

Sandler's argument is based principally on *Partington v. Bugliosi*, 56 F.3d 1147, 1153 (9th Cir. 1995). The *Partington* Court considered whether an attorney's statements, published in the attorney's book after a controversial and well-publicized trial, were actionable. The Court concluded that in that context, the author's unflattering statements about another counsel's trial strategy were not actionable. Sandler seizes on the statement that "assessments of a lawyer's trial performance are inherently subjective and therefore not susceptible of being proved true or false." *Id.* at 1157; *see also id.* at 1157-58 (quoted in Mot. (doc. no. 11-1) at 14-15).

Sandler's reliance on *Partington* is unpersuasive for two reasons. First, *Partington* emphasized that the context in which the statement is made is important in determining whether it is actionable. *See* 56 F.3d at 1153-57 (examining the "general and specific contexts"). The context in which Sandler allegedly made his statements is vastly different from *Partington*. Sandler made his statements about Handal's performance in the Derivative Action while the action was ongoing and did not merely "offer[] his personal perspective" because his readers would be interested in his views. *See id.* at 1154. He allegedly made the statements to persuade Handal's clients to act on them by terminating Hadal and filing a malpractice lawsuit. Second, the *Partington* Court acknowledged that the case did not consider a criticism that the counsel's representation fell below a particular standard. *Id.* at 1158 & n.15.[2] Sandler allegedly stated that Handal committed malpractice, *i.e.,* that his representation fell below that standard of care in his profession. (FAC ¶ 11 ("Sandler represented that he could prove that [Handal] had committed malpractice . . ..").) Whether a statement such as this is actionable was expressly reserved in *Partington*.

---

[2] "While we hold that criticisms of a lawyer's performance in a specific trial are generally not actionable, we do not consider here whether criticisms that suggest that a lawyer has committed a serious ethical breach or that a lawyer lacks the professional qualifications necessary to practice are protected by the First Amendment. That question is not before us." *Partington,* 56 F.3d at 1158 n.15.

> At the pleading stage
>
> it is a question of law for the court whether a challenged statement is reasonably susceptible of an interpretation which implies a provably false assertion of actual fact. If that question is answered in the affirmative, the jury may be called upon to determine whether such an interpretation was in fact conveyed.

*Bentley Reserve LP v. Papaliolios,* 218 Cal. App. 4th 418, 428 (2013) (internal quotation marks and citation omitted). Sandler's alleged statements were that Handal committed malpractice and that he can prove it. These statements can reasonably be interpreted as at least implying a provably false statement of fact.[3] Whether Sandler's statements were true or false will be decided in the Malpractice Action. Handal has sufficiently alleged a defamation claim against Sandler.

## 2. Litigation Privilege

Alternatively, Sandler argues that his alleged statements are immunized by the litigation privilege under California Civil Code § 47(b). Litigation privilege is an affirmative defense. *Dickinson v. Cosby,* 17 Cal. App. 5th 655, 681 (2017). It precludes the use of protected communications and statements as the basis for most tort actions and creates an immunity from suit. *Moore v. Conliffe,* 7 Cal.4th 634, 638 n.1 (1994). It applies to any "publication or broadcast made as part of a judicial proceeding . . . irrespective of [its] maliciousness." *Action Apartment Ass'n, Inc. v. City of Santa Monica,* 41 Cal.4th 1232, 1241 (2007).

---

[3] Although the Court finds that Sandler's statements were alleged as statements of fact, the outcome would be the same is his statements were couched in the form of an opinion. Even expressions of opinion "'may often imply an assertion of objective fact.'" *Bentley Reserve,* 218 Cal. App. 4th at 426 (quoting *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 18 (1990)). "A false statement of fact, whether expressly stated or implied from an expression of opinion, is actionable." *Milkovich,* 497 U.S. at 19. The relevant issue is "whether a reasonable fact finder could conclude the . . . statement declares *or implies* a provably false assertion of fact." *Bentley Reserve,* 218 Cal. App. 4th at 427 (internal quotation marks and citation omitted, emphasis added).

> The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that has some connection or logical relation to the action.

*Id.* (internal quotation marks, brackets and citations omitted, emphasis in original).

Sandler argues that his alleged statements are privileged because they were made by one client to other clients during the pendency of the Derivative Action regarding the performance of their common attorney. Sandler's role in the litigation was not as Handal's client but as Wymont's representative. (Mot. at 8; Agreement at 6 (signed "as representative of Wymont Services, Ltd.").) Moreover, as alleged, Sandler's statements were not made in his capacity as Wymont's representative, but for Sandler's personal financial gain. (*See* FAC ¶12.) Sandler told Handal's clients that by suing Handal for malpractice, he "would get [Handal's] malpractice carrier to pay an amount to offset the fees owed to [Handal]." (*Id.*) In exchange the clients would pay Sandler a percentage of the sum saved by not paying Handal's fee. (*Id.* ¶11.) Sandler further argues that the statements were made "to further the objects of the litigation, as they were discussions amongst clients as to their attorney further representing them in the action." (Mot. at 17; *see also* Reply (doc. no. 17) at 10.) As alleged, Sandler's statements were not made to further the objects of the Derivative Action, but to advance Sandler's own interests, thus rendering the litigation privilege inapplicable.

### B. Intentional Interference with Contract

Handal alleges that Sandler interfered with the clients' performance of the Agreement by telling them they could save money by not paying Handal's fee and filing a malpractice lawsuit. Sandler argues he is not liable because he is a party to the Agreement, and alternatively, an agent for Wymont, who is a party to the Agreement. He contends that Handal has not incurred any damages because payment of his fees is not yet due under the Agreement.

/ / / / /

6

### 1. Party to the Contract and Agent Immunity

Interference with contract "cannot be committed by a contracting party." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.,* 7 Cal.4th 503, 521 n.8 (1994); *Pac. Gas & Elec. Co. v. Bear Stearns & Co.,* 50 Cal.3d 1118, 1126 (1990) ("contract between plaintiff and a third party"). Sandler argues that, as a party to the Agreement, he cannot be held liable for interference with his own contract.

Sandler admits he "is a party to the Agreement by way of his representation on behalf of Wymont." (Mot. at 8.) This is apparent on the face of the Agreement, as Sandler signed it solely "as representative of Wymont Services, Ltd."[4] (Agreement at 6.) Handal has sufficiently alleged that Sandler was not a contracting party.

Alternatively, Sandler argues that he cannot be liable because he is a representative of a party to the contract. In this regard, Sandler is relying on the agent immunity defense. A complaint may be dismissed under Rule 12(b)(6) based on an affirmative defense "only if the defense is clearly indicated and appears on the face of the pleading." *Harris v. Amgen, Inc.*, 788 F.3d 916, 943 (9th Cir. 2014), *rev'd on other grounds in Amgen, Inc. v. Harris*, 136 S. Ct. 758 (2016) (internal quotation marks, brackets and citations omitted); *see also Jones v. Bock*, 549 U.S. 199, 211-12 & 215 (2007); *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013) (dismissal appropriate "[w]hen an affirmative defense is obvious on the face of a complaint").

"[C]orporate agents and employees acting for and on behalf of a corporation cannot be held liable for inducing a breach of the corporation's contract" because they "stand in the place of the employer." *Shoemaker v. Myers,* 52 Cal.3d 1, 24 (1990). Two issues stand in the way of applying agent immunity to Sandler at the pleading stage.

---

[4] Consistently, Sandler does not contend that Handal represented him in the Derivative Action or that he could be liable for breach of contract for any failure to pay Handal for its legal work in the Derivative Action. Also, consistently, Sandler did not join in the Malpractice Action against Handal. *See* Def.'s Ex. D.

7

3:18-cv-00169-L-AGS

First, Handal alleges, and Sandler confirms, that Sandler encouraged not only his principal, Wymont, but also the other parties to the Agreement whom he did not represent. (S*ee, e.g.,* FAC ¶ 10 ("In furtherance of his effort to induce the breach of the Agreement, Sandler told Jim Lindsey, William Johns and March Van Antro that Plaintiff was negligent in the performance of his duty . . .."); Reply at 6 ("Mr. Sandler's discussion with the other parties regarding terminating their attorney and withholding its fees . . ..")). Handal also expressly alleges that Sandler made the proposal in his individual capacity and not as Wymont's agent. (FAC ¶12.) On the face of the pleadings, Sandler did not act in his capacity as Wymont's agent.

Second, agent immunity does not apply when the agent acts for his "individual advantage." *Applied Equip.,* 7 Cal.4th at 512 n.4 (internal quotation marks and citation omitted). Sandler relies on *Mintz v. Blue Cross of California,* 172 Cal. App. 4th 1594 (2009), which found the agent not liable for conspiracy with its principal to interfere in the plaintiff's contract. Handal's allegations and the Agreement bear some resemblance to the contract in *Mintz* insofar as the contract expressly stated that the defendant acted on behalf of one the contracting parties as its agent to administer the contract. *Id.* at 1603-04. However, *Mintz* acknowledges that agents are immune from liability only "'where they act in their official capacities on behalf of the corporation and not as individuals for their individual advantage.'" *Id.* at 1604 (quoting *Applied Equip.,* 7 Cal.4th at 512 n.4). The individual advantage refers to "a personal advantage or gain that is over and above ordinary professional fees earned as compensation for performance of the agency." *Berg & Berg Enterprises, LLC v. Sherwood Partners, Inc.*, 131 Cal. App. 4th 802, 834 (2005). Handal alleges that Sandler induced breach of the Agreement for his own financial gain – a percentage of the sum Handal's clients would save by not paying Handal. (FAC ¶11.) Sandler made this proposal to all of Handal's clients. (*Id.*) These allegations are susceptible to a reasonable inference that all clients would pay Sandler's fee and that the fee was over and above the compensation he was receiving from Wymont. Sandler's immunity is therefore not apparent on the face of the pleadings.

### 2. Causation and Damage

Handal alleges it was damaged because due to Sandler's interference, Handal's clients, among other things, terminated Handal and refused to pay the $5 million contingency fee as provided in the Agreement. (FAC ¶¶ 10-13.) Sandler contends that Handal has not been damaged because the $5 million fee was not owing at the time of termination and the Agreement allows the clients to terminate Handal "at any time, even for no reason, upon written notice . . .." (Agreement at 3.) Sandler's argument is unavailing. If a plaintiff can otherwise state a claim for interference with contract, the fact that the contract is terminated according to its terms does not preclude the claim. *Pac. Gas & Elec.,* 50 Cal.3d at 1127. Furthermore, the Agreement provides that upon termination Handal is entitled to recover the fees and costs incurred through the date of termination and "shall be entitled to the contingency recoveries in relation to the value of the services rendered" as of the date of termination. (Agreement at 3-4.)

Alternatively, Sandler argues that Handal has not been damaged because no contingency fee is yet due. The contingency fee is to be paid from cash proceeds from the sale of the securities awarded in the Derivative Action; however, according to Sandler, the clients have not yet collected any cash proceeds. (*See* Agreement at 2; Reply at 9.) Sandler's argument is based on the premise that breach of contract is required to state a claim for intentional interference with contract. However, to state a claim, a plaintiff must allege either "actual breach or disruption of the contractual relationship." *Pac. Gas & Elec.*, 50 Cal.3d at 1126. Assuming solely for the sake of argument, and without deciding, that Handal's allegations are insufficient to show that its clients breached the Agreement, the allegations are sufficient to show that Sandler's alleged interference caused a substantial disruption of the contractual relationship. Accordingly, Handal has sufficiently alleged a claim for intentional interference with contract.

### C. Intentional Interference with Prospective Economic Advantage

Based on essentially the same theory as intentional interference with contract, Handal alleges a claim for intentional interference with prospective economic advantage.

Initially, Sandler contends that Handal fails to state a claim because it has not provided any "factual evidence" in support of Sandler's benefit from his alleged interference. (Mot. at 12.) At the pleading stage, Handal is not required to provide factual evidence. *See* Fed. R. Civ. Proc. 8(a); *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, that the defendant benefitted from the interference is not an element of the claim. *See* Jud. Council of Cal. Civ. Jury Instr. 2202; *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003). (*See also* Mot. at 12 (quoting *Crown Imports, LLC v. Super. Ct. (Classic Distributing & Beverage Group, Inc.),* 223 Cal. App. 4th 1395, 1404 (2014)).)

Sandler also contends that Handal fails to state a claim because it does not allege that the act of interference was independently wrongful, "*i.e.* unlawful for the reasons other than that it interfered with a prospective economic advantage." *Stevenson Real Estate Servs, Inc. v. CB Richard Ellis Real Estate Servs, Inc.,* 138 Cal. App. 4th 1215, 1224 (2006); *see also Korea Supply*, 29 Cal. 4th at 1158. "[A]n act is independently wrongful . . . if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Korea Supply,* 29 Cal.4th at 1159 (footnote omitted). Handal alleged that Sandler's act of interference was falsely stating to Handal's clients that Handal committed malpractice. As discussed above, Sandler's alleged statements in this regard were contrary to California law because they were defamatory. *See* Cal. Civ. Code §§ 44 *et seq.*

### D. Cross-Claim in the Malpractice Action

Finally, Sandler argues that this action should be dismissed because Handal's claims against him should have been asserted as cross-claims in the Malpractice Action pursuant to California Code of Civil Procedure §428.10, which provides, in relevant part:

> A party against whom a cause of action has been asserted in a complaint or cross-complaint *may* file a cross-complaint setting forth either or both of the following:
> (a) Any cause of action he has against any of the parties who filed the complaint or cross-complaint against him . . . .

> (b) Any cause of action he has against a person . . . if the cause of action asserted in his cross-complaint (1) arises out of the same transaction, occurrence, or series of transactions or occurrences as the court brought against him or (2) asserts a claim, right, or interest in the property or controversy which is the subject of the cause brought against him.

(Emphasis added.) This statute, which is permissive rather than compulsory, does not apply because Sandler is not a party to the Malpractice Action either as a plaintiff or counter-defendant.[5] (*See* Def.'s Ex. D at 9-10.)

Sandler's argument is further based on the contention that this action raises issues which are also before the State Court in the Malpractice Action. For example, to prevail on its defamation claim, Handal will have to prove the falsity of Sandler's statement that Handal had committed malpractice. *See Charney*, 10 Cal. App. 5th at 157 (falsity an element of defamation). Sandler urges dismissal of this action because of potential for inconsistent rulings. However, the only motion Sandler has presented for decision is under Rule 12(b)(6) for failure to state a claim. As discussed above, Handal has sufficiently alleged its claims. To the extent Sandler contends that this action cannot proceed because of the possibility of inconsistent rulings, he must timely file an appropriate motion.

For the foregoing reasons, Sandler's motion to dismiss is denied.

**IT IS SO ORDERED.**

Dated: June 10, 2019

Hon. M. James Lorenz
United States District Judge

---

[5] California's compulsory cross-claim statute does not apply for the same reason. *See* Cal. Civ. Proc. Code §426.30.

11

3:18-cv-00169-L-AGS