UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HANDAL & ASSOCIATES, INC.,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>JONATHAN BRUCE SANDLER<br>(A.K.A. JONTY SANDLER),<br><br>　　　　　　Defendant. | Case No.: 3:18-cv-00169-L-AGS<br><br>**ORDER DENYING DEFENDANT'S MOTION TO STAY** |

　　　Pending before the Court is Defendant Jonathan Bruce Sandler's ("Sandler") motion to stay this action pending the resolution of another action pending in state court. Plaintiff Handal & Associates, Inc. ("Handal") opposed, and Sandler replied. The Court decides this matter on the briefs without oral argument. *See* Civ. L. R. 7.1.d.1. For the reasons stated below, Defendant's motion is denied.

　　　According to the operative First Amended Complaint, Handal entered into a written retainer agreement. (First Am. Compl. (doc. no. 10, "FAC"); FAC Ex. A (doc. no. 10-1, "Agreement")). The purpose of the Agreement was to represent several clients as "Plaintiffs in the African Wireless, Inc., Derivative Action" ("Derivative Action").
/ / / / /

(Agreement at 2;[1] *see also* FAC ¶¶ 1, 6.) Among other things, the Agreement provides for a 15% contingency fee of up to $5 million. (Agreement at 3.) Handal claims it litigated the Derivative Action to judgment that exceeded $93 million and contends this entitles it to the maximum fee of $5 million. (FAC ¶ 9.)

Sandler was a representative of one of Handal's clients, Wymont Services, Ltd. ("Wymont"). (Agreement at 2, 7.) Handal claims that Sandler, acting for his personal financial gain, falsely told Handal's clients that Handal was negligent and committed malpractice in the Derivative Action. (FAC ¶ 10.) Sandler allegedly offered to assist Handal's clients to avoid paying Handal in exchange for a percentage of the money they would save. (*Id.* ¶11.) Specifically, Sandler told the clients that by suing Handal for malpractice, he "would get [Handal's] malpractice carrier to pay an amount to offset the fees owed to [Handal]." (*Id.*)

Handal alleges that based on Sandler's statements the clients refused to pay the $5 million contingency fee. (*Id.* ¶ 13). On May 17, 2017, the clients filed a malpractice action against Handal, *Wymont Servs. Ltd. et al. v. Handal & Assocs. et al.,* Cal. Super. Ct., Orange County case no. 30-217-00920613 ("Malpractice Action"). (Def.'s Req. for Judicial Notice Ex. D (doc. no. 12-4, "Def.'s Ex. D") at 2.) Handal filed a cross-complaint against them alleging breach of contract and anticipatory breach. (*Id*. at 4; *see also* Mtn to Stay (doc. no. 23-1) at 3-4.) In addition, Handal filed this action for intentional interference with contract, intentional interference with prospective economic advantage, and defamation against Sandler, who is not a party to the Malpractice Action. On January 18, 2019, the California Court of Appeal affirmed the judgment in the Derivative Action. (Doc. no. 18-1.) The Malpractice Action was stayed during the appeal of the Derivative Action and is now set for trial in December 2019. (Mtn to Stay at 2-3, 4.)

---

[1] All page references are assigned by the Electronic Case Management System.

Sandler moves to stay this action pending the conclusion of the Malpractice Action pending in state court, arguing that a stay will prevent inconsistent rulings and conserve resources. He invokes both, the first-to-file rule (Reply (doc. no. 29) at 6), and the Court's discretionary power to control its docket (Mtn to Stay at 4-5). Neither argument is persuasive.

In the area of concurrent state and federal actions, as a general rule, "federal courts lack the authority to abstain from the exercise of jurisdiction that has been conferred." *New Orleans Public Serv., Inc. v. Council of City of New Orleans,* 491 U.S. 350, 358 (1989). "[T]he courts of the United States are bound to proceed to judgment and to afford redress to suitors before them in every case to which their jurisdiction extends." *Id.* (internal quotation marks and citation omitted, brackets in original). Sandler does not question that the pending case falls within federal jurisdiction.

The first-to-file rule is "a judicially created doctrine of federal comity, which applies when two cases involving substantially similar issues and parties have been filed in different districts." *In re Bozic*, 888 F.3d 1048, 1051 (9th Cir. 2018) (internal quotation marks and citations omitted). The doctrine applies to concurrent federal actions and is therefore not applicable here. Moreover, the pending action and the Malpractice Action involve different parties and different legal claims. Even if the actions were concurrently pending in federal courts, the doctrine would not apply.

Alternatively, Sandler requests a stay under the Court's inherent power to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). In this regard, the movant

> must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else. Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both.

*Id*. at 255. Even where the other action in all likelihood will settle many issues of law or fact and simplify the action sought to be stayed, the "burden of making out the justice and wisdom of a departure from the beaten track lay[s] heavily on the . . . suppliants for relief, and discretion [is] abused if the stay [is] not kept within the bounds of moderation." *Id*. at 256. Accordingly, to warrant a stay of even modest duration, the moving party must "make out a clear case of hardship or inequity." *Id.* at 255.

Handal claims it would be prejudiced by a stay, even a stay of short duration, because of potential loss of evidence, including the fact that one of the witnesses it wants to depose is elderly and in poor health. (Opp'n (doc. no. 28) at 12.) Accordingly, to warrant a stay of any length, Sandler must show a clear case of hardship or inequity. Sandler claims he will be prejudiced if this action proceeds because of the overlap between the actions, which will force him to duplicate his efforts in discovery and may result in conflicting rulings.

Sandler overstates the extent of the overlap between this action and the Malpractice Action. He is not a party in the Malpractice Action, and the claims alleged are different. There is some overlap between Handal's former clients' malpractice claim against Handal and Handal's claim for defamation against Sandler. Handal's defamation claim will require proof that Sandler's statement that Handal committed malpractice was false. Whether Handal committed malpractice is an issue in the Malpractice Action. However, Handal's claims for intentional interference with contract and intentional interference with prospective economic advantage against Sandler are not presented in the Malpractice Action.

Overlap in the legal and factual issues regarding malpractice does not mandate a stay in the absence of a clear case of hardship or inequity. *See Landis,* 299 U.S. at 255. In this regard, Sandler points to the potential overlap in discovery. That discovery in both actions may cover some of the same information is not a sufficient ground to stay
/ / / / /

this action. Sandler presents no reason why discovery obtained in one action could not be used in the other to avoid duplication.

For the foregoing reasons, Sandler's motion to stay is denied.

**IT IS SO ORDERED.**

Dated: September 17, 2019

_____
Hon. M. James Lorenz
United States District Judge