UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HANDAL & ASSOCIATES, INC., | Case No.: 3:18-cv-169-L-AGS |
| Plaintiff, | |
| v. | **ORDER ON DEFENDANT'S** |
| JONATHAN BRUCE SANDLER, | **MOTION FOR SUMMARY** |
| Defendant. | **JUDGMENT (ECF 101)** |

Pending before the Court is Defendant Johnathan Bruce Sandler's ("Sandler") motion for summary judgment. (ECF 101). Plaintiff Handal and Associates ("H&A") opposed, and Sandler replied. (ECFs 102-103). The Court decides the matter without oral argument. *See* Civ. L. R. 7.1. For the reasons stated below, the Court **GRANTS** the motion.

**LEGAL STANDARD**

Summary judgment is appropriate where the record, taken in the light most favorable to the opposing party, indicates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (explaining the standard); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-324 (1986).

1

To meet their burden, the moving party must present evidence that negates an essential element of the opposing party's case or show that the opposing party does not have evidence necessary to support its case. *See Celotex*, 477 U.S. at 322-23; *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1105-06 (9th Cir. 2000).

If the moving party meets this burden, the opposing party must support its opposition by producing evidence to support its claim. *Celotex Corp.*, 477 U.S. at 324; *Nissan Fire & Marine Ins.*, 210 F.3d at 1103. The opposing party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) ("the mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient.") (internal citation omitted).

Facts are material when, under the substantive law, they could affect the outcome of the case. *Anderson*, 477 U.S. at 248. Disputes are genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

The court must view all inferences from the underlying facts in the light most favorable to the nonmoving party. *See Matsushita*, 475 U.S. at 587.  However, it cannot make credibility determinations or weigh evidence. *Anderson*, 477 U.S. at 255

"Mere allegation and speculation do not create a factual dispute for purposes of summary judgment." *Nelson v. Pima Community College*, 83 F.3d 1075, 1081-82 (9th Cir. 1996).

"The district court may limit its review to the documents submitted for the purpose of summary judgment and those parts of the record specifically referenced therein." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001). Therefore, courts are not obligated "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996).

## BACKGROUND

H&A, a law firm, entered into an agreement to represent Wymont Services Limited ("Wymont"), James R. Lindsey, William Buck Johns, and Marc Van Antro (collectively, "Clients") in a derivative action. (ECF 106). Sandler signed the agreement as Wymont's representative. *Id*. The Clients held shares in African Wireless, Inc. ("AWI"). The suit was against AWI's majority shareholder (among others).

The Clients also entered into a common interest agreement. *Id*; (ECF 102 at Exhibit C). The agreement set forth Sandler's responsibilities related to the derivative action, including interacting with H&A, coordinating the litigation, and engaging in negotiations. *Id*. The retainer agreement also set forth that Sandler and Lindsey represented the Clients. (ECF 10, Exhibit A). Sandler and Lindsey, on the Clients' behalf, had the absolute right (together or acting with the other's written authority) to accept or reject settlement offers. *Id*. Similarly, they had the authority to terminate H&A's representation. *Id*. H&A was also required to keep Sandler informed about the action and its intended strategies. *Id*.

The court in the derivative action struck the defendants' answers and entered a default against them. (ECF 102 at 3); (ECF 106). On July 6, 2016, the court held a default prove-up hearing. (ECF 102-1 at 4); (ECF 106). It awarded AWI a constructive trust over shares in other companies. *Id*. The Clients thereafter sought a new trial and to amend the judgment. (ECF 102 at Exhibit H).

On August 5, 2016, the Clients signed an addendum to the common interest agreement that stated Sandler should renegotiate H&A's contingency fee, from 15% to 7.5%. (ECF 102 at Exhibit E). Later, Lindsey asked H&A to waive or reduce its contingency fee. (ECF 102-1).

On August 29, 2016, the court amended the judgment to assign a value for the awarded shares. (ECF 102 at 3-4); (ECF 106). But it denied the motion for a new trial. (ECF 102 at Exhibit H).

On September 4, 2016, William Buck Johns, on the Clients' behalf, sent H&A a notice of termination. (ECF 102-1 at 5). The notice indicated the Clients would continue to retain H&A as counsel if it agreed to modify the fee arrangement. *Id*. H&A refused the offer. *Id*.

On September 7, 2016, the Clients entered into another addendum to the common interest agreement that specified Sandler would receive compensation if he successfully negotiated a reduction in H&A's fee. (ECF 102 at Exhibit K).

H&A contends Sandler interfered with its client relationship and its right to a fee under the retainer agreement. It also contends Sandler made statements that H&A committed malpractice and acted unethically. It asserts three claims against Sandler: (1) intentional inducement to breach contract, (2) intentional interference with prospective economic advantage, and (3) defamation. (ECF 10, Amended Complaint).

Sandler argues the Court should grant him summary judgment because: (1) the litigation privilege bars the claims, (2) the agent immunity rule applies, (3) there are no cognizable damages, and (4) his conduct did not cause the alleged injury. (ECF 101).

**DISCUSSION**

***H&A's Motion to Continue***

H&A asks the Court to defer ruling on Sandler's motion. (ECF 102). Under Federal Rule of Civil Procedure 56, "if a nonmovant shows . . . it cannot present facts essential to justify its opposition, the court may . . . defer considering the motion or deny it."

H&A argues it needs to depose more individuals. (ECF 102). It made a similar request after Sandler filed his original summary judgment motion. (ECFs 71 and 77). The Court granted that request and denied Sandler's motion without prejudice. (ECF 82).

H&A argues it must depose James Lindsey and Sandler. (ECF 102). According to the opposition, it has "tried *without success* to depose" them. (*Id*. at 10) (emphasis added); (*id*. at 17) ("a factual question [exists] that cannot be determined without Lindsey [or] Sandler's . . . depositions."); (*see also id*. at 22). Yet, it deposed them over a month

before it filed the opposition. (*Id.* at Exhibits N and O). It also relies on their testimony to oppose Sandler's motion. *Id.*[1]

H&A likewise argues it needs more time to depose Rhondi Walsh and Marc Van Antro. (ECF 102 at 10-11).[2] The Court granted the prior continuance request on July 9, 2020. (ECF 82). H&A's opposition to the current motion was due on October 19, 2020 – more than three months later. (*See* ECF 101). But there is nothing in the record to show H&A was diligent after the Court granted its earlier request. (ECF 102). Although it subpoenaed Walsh, his counsel objected. *Id.* H&A later withdrew the subpoena. (ECF 103).

For those reasons, the Court denies H&A's request. *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1161 n.6 (9th Cir. 2001) (a "district court does not abuse its discretion by denying further discovery if the movant has failed diligently to pursue discovery in the past.") (internal quotation marks and citation omitted); *Mackey v. Pioneer Nat'l Bank*, 867 F.2d 520, 524 (9th Cir. 1989) ("a movant cannot complain if it fails diligently to pursue discovery before summary judgment.")

H&A also requests leave to amend its complaint. (ECF 102 at 11). But it failed to show good cause. *See* Fed. R. Civ. P. 16. The Court therefore denies the request.

### *Sandler's Motion for Summary Judgment*

Sandler argues H&A's claims are barred under California Civil Code section 47 (known as the litigation privilege). (ECF 101-1). That section provides that a "privileged publication" is one made "in any . . . judicial proceeding." Cal. Civ. Code § 47. It applies to communications litigants or other authorized participants make in judicial proceedings to achieve the objects of the litigation that have some connection or logical relation to the

---

[1] H&A's prior request contained identical statements about the need to depose them. (*Compare* ECF 77-2 at 2-3 *with* ECF 102 at 10).

[2] H&A cites paragraphs 31 and 32 from Mr. Handal's declaration to support its request about Walsh and Van Antro. (ECF 102 at 11). But those paragraphs have nothing to do with those individuals. (ECF 102-1).

action. *Silberg v. Anderson*, 50 Cal. 3d 205, 212 (1990). "The requirement that the communication be in furtherance of the objects of the litigation is, in essence, simply part of the requirement that the communication be connected with, or have some logical relation to, the action, i.e., that it not be extraneous to the action." *Id*. at 219-220.

"The breadth of the litigation privilege cannot be understated. It immunizes defendants from virtually any tort liability (including claims for fraud)." *Olsen v. Harbison*, 191 Cal. App. 4th 325, 333 (2010). It "is absolute and applies regardless of malice." *Jacob B. v. Cnty. of Shasta*, 40 Cal. 4th 948, 955 (2007). Even communications that are fraudulent, perjurious, unethical, or illegal might fall within its scope. *Id*. at 957-959; *Kashian v. Harriman*, 98 Cal. App. 4th 892, 920 (2002). Doubts are also resolved in its favor. *Wang v. Heck*, 203 Cal. App. 4th 677, 684 (2012).

Its purposes "are to afford litigants and witnesses free access to the courts without fear of being harassed subsequently by derivative tort actions, to encourage open channels of communication and zealous advocacy, to promote complete and truthful testimony, to give finality to judgments, and to avoid unending litigation." *Jacob B.*, 40 Cal. 4th at 955 (internal quotation marks and citation omitted).

Sandler argues the privilege applies because he represented a litigant, the statements were made while the derivative action was active, and the topic related to whether the litigant's counsel was competent or appropriate. (ECF 101-1 at 16-17).

H&A does not argue there are genuine issues of material facts as to whether the litigation privilege applies.[3] (*See* ECF 102); *Kashian v. Harriman*, 98 Cal. App. 4th 892, 913 (2002) ("if there is no dispute as to the operative facts, the applicability of the

---

[3] In the section related to the litigation privilege, H&A concludes there is a "great material dispute over what Sandler did or said as well as when he said it and in what context." (ECF 102 at 22). However, it does not provide support for that conclusion or explain it. *See Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003) (nonmoving party cannot defeat summary judgment with "unsupported conjecture or conclusory statements."); *Keenan*, 91 F.3d at 1279.

litigation privilege is a question of law.") And it does not dispute the claims relate to communications that occurred while the derivative action was active. (*See* ECF 102 at 21-22). It also does not dispute Sandler was an "authorized participant." *Id*.[4] The Court construes that as a waiver. *See Image Technical Service, Inc. v. Eastman Kodak*, 903 F.2d 612, 615 n.1 (9th Cir. 1990).

Regardless, those elements are met. H&A's claims relate to Sandler's statements about its performance and compensation. The statements were also made while the derivative action was active.[5] In addition, Sandler had a substantial interest in the litigation. He was Wymont's (a plaintiff to the action) representative. (ECF 102-1 at ¶ 2). In that role, he was authorized to direct and coordinate the action. (ECF 10, Amended Complaint at ¶ 8). And he was able to make strategic decisions about it. (ECF 102-1 at ¶ 5); (ECF 102, Exhibit C).[6] Therefore, he was an "authorized participant." *See Costa v.*

---

[4] H&A raises purported genuine disputes about material facts related to Sandler's authority as Wymont's agent. (*See* ECF 102 at 13-14). But those arguments relate to whether the agent immunity applies to Sandler's conduct. *Id*. And, as discussed later, an "authorized participant" under the litigation privilege is not limited to parties or their agents.

[5] H&A argues it is logical to assume the Clients began to discuss reducing its fee since August 5, 2016, when they entered into an addendum to their common interest agreement. (ECF 102 at 18; Exhibit E). The addendum indicates Wymont retained co-counsel. *Id*. It set forth a proposal that H&A's contingency rate be reduced from 15% to 7.5%. *Id*. In August 2016, the Clients also filed a motion for a new trial (related to the original default judgment). (ECF 102 at Exhibit H). On August 29, 2016, the court denied that motion. *Id*. The proceedings in the derivative action continued through at least December 16, 2016. *Id*.; (*see also* ECF 102 at 6) (discussing that, in June 2019, the sheriff put up for sale the shares obtained in the derivative action); (ECF 106).

[6] The Clients entered into a common interest agreement. (ECF 102 at Exhibit C). The agreement set forth Sandler's responsibilities related to the derivative action. (*Id*. at 3) ("Sandler shall . . . directly interface with [H&A] and coordinate the litigation."); (*id*.) ("Sandler . . . shall have responsibility for handling any negotiations with the Defendants."); (*id*. at 8) ("Sandler [agrees] to use [his] best judgment in making decisions pertaining to the Litigation for the [Clients'] benefit.") The retainer agreement also set forth that Sandler and Lindsey represented the Clients. (ECF 10, Exhibit A). They had the

*Superior Court*, 157 Cal. App. 3d 673, 678 (1984) (non-litigants with a "substantial interest in the outcome of the litigation" are "authorized participants."); *Adams v. Superior Court*, 2 Cal. App. 4th 521, 529 (1992) (the privilege applies to individuals that are "merely . . . connected or related to the proceedings."); *GetFugu, Inc. v. Patton Boggs LLP*, 220 Cal. App. 4th 141, 152 (2013).

H&A's arguments on the litigation privilege concern the last two elements. Specifically, it argues Sandler's statements were not made to achieve the objects of the litigation because the objects were "largely achieved." (ECF 102 at 21). H&A relies on the judgment entered in the action. *Id*. But it does not cite authority to support the proposition that the privilege is inapplicable if the communication occurs after the objects are "largely achieved." Again, the privilege is expansive. It applies to communications made in "judicial proceedings." That encompasses communications that occur post-judgment. *See Rusheen v. Cohen*, 37 Cal. 4th 1048 (2006) (the privilege "is not limited to statements made during a trial or other proceedings, but may extend to steps taken . . . afterwards."); *see, e.g.*, *Ritchie v. Sempra Energy*, 703 F. App'x 501, 505 (9th Cir. 2017) (litigation privilege "extends to post-judgment acts necessarily related to the enforcement of an order procured by an allegedly wrongful communicative act.") And the "furtherance" element is met if the communication has a "logical relation" to the action. *Silberg*, 50 Cal. 3d at 219-220. Also, as discussed above, the Clients sought a new trial and to alter the judgment. That transpired while the Clients were discussing a reduction in H&A's fee, etc. (ECF 102 at 18).[7]

---

absolute right – together or acting with the other's written authority – to accept or reject settlement offers on the Clients' behalf. *Id*. And they had the ability to discharge H&A on the Clients' behalf. *Id*. H&A was also required to keep Sandler informed about the action and its intended strategies. *Id*.

[7] H&A contends Sandler's statements caused the Clients to seek a reduction in its fees. And the Clients entered into an addendum to the common interest agreement in August 2016, which stated they would seek to reduce H&A's contingency fee in half (from 15% to 7.5%).

Here, the communications were about H&A's competency/conduct in the derivative action and what to do about it. The communications therefore were logically related to the action. *See, e.g., Grant & Eisenhofer, P.A. v. Brown*, 2017 U.S. Dist. LEXIS 204184, at *17-20 (C.D. Cal. 2017) (litigation privilege applied to claims that were based on an alleged conspiracy between a client and an attorney to deny a former attorney their fees); *see also Williams & Cochrane, LLP v. Quechan Tribe of the Fort Yuma Indian Reservation*, 2018 U.S. Dist. LEXIS 141031, at *10, 18 (S.D. Cal. 2018) (litigation privilege would bar intentional interference claim against counsel that interfered with a prior attorney-client relationship); *Olsen*, 191 Cal. App. 4th at 336.

H&A also argues the litigation privilege does not apply because Sandler made the statements for his own benefit. But it fails to cite support for the proposition that self-interested communications are not protected under the litigation privilege.[8] Notably, "the 'furtherance' requirement was never intended as a test of a participant's motives, morals, ethics or intent." *Silberg*, 50 Cal. 3d at 220. Again, the inquiry is whether the communications had a logical relation to the action. *Id*. The Court therefore rejects that argument.

Ultimately, "the question of whether the litigation privilege should, or should not, apply to particular communications has always depended upon a balancing of the public interests served by the privilege against the important private interests which it sacrifices." *Rothman v. Jackson*, 49 Cal. App. 4th 1134, 1146-47 (1996). "The disallowance of derivative tort actions based on communications of participants in an earlier action necessarily results in some real injuries that go uncompensated." *Silberg*, 50 Cal. 3d at 218. But, in some cases, "other remedies aside from a derivative suit for

---

[8] That proposition – if adopted – would significantly limit the privilege. For instance, litigants are self-interested (i.e., plaintiffs seek compensation while defendants seek to avoid liability). The same applies to counsel (i.e., they seek to prevail in the suit and receive compensation). There are also interested witnesses (in addition to the parties).

compensation [might] exist and may help deter injurious publications during litigation." *Id.* at 218-19.

H&A is not without recourse. It seeks to recover from Sandler what it contends is owed under the retainer agreement. And it has the potential to assert a *quantum meruit* claim against the Clients.[9] *See Olsen*, 191 Cal. App. 4th at 342; *Fracasse*, 6 Cal. 3d at 790. Also, the potential for principals to file civil suits against their agents (e.g., for breaching their duties) acts as a deterrent in situations like this.[10] Whereas, to permit this case to proceed would have an adverse effect: it would discourage representatives of parties to an action from discussing their counsel's conduct or suggesting the parties retain new counsel. And "it is desirable to create an absolute privilege . . . not . . . to protect the shady practitioner, but . . . [so] the honest one . . .  [is not] concerned with subsequent derivative actions." *Silberg*, 50 Cal. 3d at 214.

---

[9] H&A asserts an inducement to breach contract claim against Sandler. To succeed on that claim, a breach must have occurred. *See Pacific Gas & Electric Co. v. Bear Stearns & Co.*, 50 Cal.3d 1118, 1129 (1990) ("while the tort of inducing breach of contract requires proof of a breach, the cause of action for interference with contractual relations is distinct and requires only proof of interference."); *id.* at 1126-27 (cause of action for intentional interference with contractual relations may be viable where an individual induced a party to a contract to terminate it according to its terms). But here, the Clients terminated the contract per its terms. (ECF 102, Exhibit J); *see Fracasse v. Brent*, 6 Cal. 3d 784, 790 (1972) ("the client's power to discharge an attorney, with or without cause, is absolute.") Moreover, upon termination, the contract required H&A and the Clients to reach an agreement (i.e., negotiate) as to the value of the services provided. (*See* ECF 10, Retainer Agreement, Article VI). Also, "an attorney employed under a contingent fee contract and discharged prior to the occurrence of the contingency is limited to quantum meruit recovery [i.e., an equitable remedy] for the reasonable value of services rendered up to the time of discharge, rather than the full amount of the agreed contingent fee." *Joseph E. Di Loreto, Inc. v. O'Neill*, 1 Cal. App. 4th 149, 156 (1991) (internal quotation marks and citation omitted).

[10] Mr. Handal communicated with Wymont's director during the derivative action and included them in its correspondences. (ECF 102-1 at ¶ 5).

Based on the above, the litigation privilege applies. *See, e.g., Grant & Eisenhofer, P.A.*, 2017 U.S. Dist. LEXIS 204184 at *17-20; *see also Williams & Cochrane, LLP,* 2018 U.S. Dist. LEXIS 141031 at *10, 18; *Olsen*, 191 Cal. App. 4th at 336. H&A's claims are barred under it.[11] Even viewing all inferences in H&A's favor, Sandler is entitled to judgment as a matter of law.[12] The Court **GRANTS** the motion for summary judgment.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** the motion for summary judgment. The Clerk is instructed to enter judgment in Sandler's favor and close this case.

*IT IS SO ORDERED.*

Dated:  August 3, 2021

Hon. M. James Lorenz
United States District Judge

---

[11] H&A did not argue its claims survive even if the litigation privilege applies.

[12] The Court will therefore not address Sandler's other arguments.